THE CITY OF ROCHESTER, Plaintiff, *v.* PHILLIP PARR, Defendant.

City Court of Rochester, Criminal Branch, November 16, 1937.

[redacted]

*Daniel J. O'Mara, District Attorney* [*Thomas H. Culhane* of counsel], for the plaintiff.

*George Hoffenberg*, for the defendant.

TOMPKINS, J. The information charges the defendant " did circulate advertisements upon a public street, without having obtained permission from the Bureau of Licenses, in violation of Sec. 3 of Art. I of the Municipal Code of the City of Rochester." The evidence shows that the defendant, while on Bausch street, handed circulars like Exhibit 1 to various persons as they came out of the Bausch & Lomb factory. It was conceded that he had previously distributed similar circulars, and that he had no license therefor.

The circular, Exhibit 1, describes the advantages of trade unions and closes with the plea: " JOIN THE UNITED OPTICAL WORKERS' UNION, affiliated with the C. I. O." C. I. O., as appears therein, stands for the " Committee for Industrial Organization."

Article I of the ordinance is entitled: " Occupations Requiring Licenses." It provides: " Without having procured a license, as required by this Ordinance, no person shall carry on any business herein named, within the City of Rochester." Following this paragraph, there are eleven separate enumerated occupations or businesses. By section 3, which it is charged the defendant violated, the occupation or business is described therein as " of bill posting and distributing or sign advertising."

The penalty for the violation of this ordinance by section 41 of article VI thereof is a fine of $150, or 150 days' imprisonment, or both.

Does the evidence establish that the defendant engaged in the " occupation " or " business " of " bill posting and distributing? " There is a total lack of evidence as to under what arrangement the defendant was distributing these circulars; whether he was doing it for hire or as a volunteer; or whether he was engaged in the business or occupation generally of distributing circulars. The information, itself, does not aver that he was engaged in any " business " or " occupation." It is the " occupation " or " busi-

ness " of " bill posting and distributing " which must be licensed. In the case of *People* v. *Cilman* and three others, convicted in this court in 1933 of violating the same section, by distributing, without a license, circulars advertising an anti-war meeting, Judge LYNN of the County Court, in reversing the conviction, said: " These circulars were merely advertisements of what might be called a political meeting, and distribution was clearly not intended to be covered by the ordinance quoted."

Section 3 of article I, which the defendant is charged with violating, provides that the business of " bill posting and distributing " shall " cover the act of going upon any of the public streets * * * for the purpose of circulating advertisements of any kind." The circular in question advertised the advantages of a particular trade union. The defendant was on a public street for the purpose of circulating it. His act came within the purview of the language quoted.

Is the incorporation of the quoted language meant merely to include each act of distribution on a public street as a branch of the business of " bill posting and distributing," or is it an attempt to make each occasional act of distributing circulars on a public street itself an offense, unless a license therefor is obtained?

If the language is meant merely to include specific acts of distributing, as an adjunct to the occupation of bill posting, then, before a conviction may be had, it must be established that the distributor in question is engaged in the business of " bill posting." Proof of a sporadic act of distributing circulars is not sufficient. If the ordinance, on the other hand, is an attempt to make each act of distributing an offense unless licensed, is its adoption authorized by the charter of the city of Rochester?

Section 2 of article IV of the ordinance provides that before a bill poster and distributor may be licensed, he must give a bond for $500. Section 18 of article III requires him to pay a fee of twenty dollars, while section 15 of article II provides: " The power herein granted as to the issuing of licenses is discretionary, and it is to be exercised as may seem for the public good."

If a license may be required before a person may go upon a public street and hand to passersby a circular advertising a political meeting, a religious meeting or a social reform, then such organization, so advertised, is at the mercy of the licensing board, bureau or officer, who in its or his discretion may grant or refuse a license. An over-zealous Democrat might refuse to permit the advertising of a Republican meeting, while a too-enthusiastic Republican, likewise, might turn his back upon a Democratic applicant; and each acting for what he believed to be the " public good." In other

words, the licensing bureau or officer with absolute power to grant or refuse a license, becomes an unquestioned dictator. Dictators, be they the zenith or nadir among the systems of government, are, in this country, today, and for all time we hope, taboo.

What authority is there for the quoted provisions of section 3 of article I? The charter of the city of Rochester of 1930, by section 117, defines certain legislative powers of the common council. Subdivision 1 thereof provides, among other things: "The common council has power to adopt ordinances for the following purposes within the city." Among the purposes enumerated is the following: "To adopt ordinances for the maintenance of order, protection of property, and preservation and care of the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto, and for any of the said purposes to regulate and license occupations and businesses." (Charter of City of Rochester of 1930, formerly Laws of 1907, chap. 755, § 86, as amd. by Laws of 1921, chap. 292.) By section 141 of the charter it is provided: "Any board, bureau or officer authorized by ordinance of the common council to grant any license has discretionary power to grant or refuse the same." (Charter of City of Rochester of 1930, § 141, formerly Laws of 1907, chap. 755, § 104.)

It is plain that if the council under section 117 of the charter might lawfully enact subdivision 3 of article I of the ordinance, they were empowered under section 141 to make the authority to license discretionary. But is there any warrant for requiring a license to distribute on the public streets circulars advertising a political meeting or a trades union? Is a license for the distribution of circulars advertising a Republican mass meeting at Convention Hall necessary "for the maintenance of order, the protection of property, the preservation and care of the safety, health, comfort and general welfare of the city of Rochester?" To permit a license board, should it happen to be composed of narrow-minded Democrats, if there be such, to so hold, would be tyranny.

The proposition as put seems silly and asinine. But, nevertheless, it is fundamental. If the distribution of circulars to a political or a religious meeting requires no license, neither do circulars advertising the benefits and advantages of an industrial organization. If the quoted wording of section 3 of article I of the ordinance in question is broad enough to make the act of this defendant in distributing the circulars advertising the trades unions organized under the C. I. O. an offense, if unlicensed, as it seems to be, then it is an unwarranted exercise of the council's power to legislate, and it is void.

If a distributor of circulars acts so as to occasion a breach of the peace, he may be prosecuted for disorderly conduct. If the circulars are obscene, he may be prosecuted for possessing or giving them away. If, however, the circulars do not offend decency, if the distributor's acts are orderly, and the distributing is not an adjunct to the business of bill posting, he commits no offense.

The defendant is discharged.